UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———————————

RANDY M. DUKES,

               Plaintiff,                           Case No.  1:16-CV-872

v.

                                           HON. JANET T. NEFF

COMMISSIONER OF SOCIAL
SECURITY,

               Defendant,

_____/

## OPINION

This is a social security action brought under 42 U.S.C. § 405(g) seeking judicial review of a final decision by the Commissioner of the Social Security Administration (Commissioner).  Plaintiff seeks review of the Commissioner's decision denying his claim for disability insurance benefits (DIB) under Title II of the Social Security Act.  Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive.

### STANDARD OF REVIEW

The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision.  *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).  The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility.  *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  It is the Commissioner who is charged with finding the

facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

This is the second time Plaintiff's application has reached this level of review. Plaintiff's DIB application was previously considered by Magistrate Judge Hugh Brenneman, Jr. In a decision dated September 22, 2014, Judge Brenneman summarized the procedural history of this case to that point as follows:

> Plaintiff was born on June 3, 1966. He alleged a disability onset date of February 15, 2009. Plaintiff had four or more years of college, and had special job training at a police academy and at truck driving school. He had previous employment as a police officer, public

school security officer and truck driver. Plaintiff identified his
disabling conditions as post-traumatic stress disorder (PTSD),
depression, left knee acl repair, bone spurs, meniscus damage and left
hip strain. The administrative law judge (ALJ) reviewed plaintiff's
claim *de novo* and entered a written decision denying benefits on
October 1, 2011. This decision, which was later approved by the
Appeals Council, has become the final decision of the Commissioner
and is now before the Court for review.

*Dukes v. Comm'r of Soc. Sec.*, No. 1:13-cv-623 (W.D. Mich Sept. 22, 2014) (ECF No. 19,

PageID.962) (internal citations and footnotes omitted). Upon review, Judge Brenneman concluded

that the ALJ's decision was not supported by substantial evidence. Specifically, Judge Brenneman

observed that the ALJ appeared to have used boilerplate language to discount the treating source

opinions by Dr. Hakima Aqel, M.D., and further found the ALJ had failed to provide good reasons

for assigning the opinions less than controlling weight. Judge Breneman further noted that it was

unclear whether the ALJ had considered an opinion from Dr. Darryl P. Plunkett, Ph.D, as one from

a treating source or as one from merely an examining source. Accordingly, the judge reversed and

remanded the decision of the Commissioner in order to "(1) determine whether Dr. Plunkett's

opinion is that of a treater or an examiner, and then evaluate the opinion accordingly, and (2) re-

evaluate Dr. Aqel's mental and physical RFC assessments." *Id.* at PageID.971.

On December 5, 2014, pursuant to Judge Brenneman's decision, the Appeals Council

remanded the case to the ALJ. (PageID.1132–1133.) On March 19, 2015, Plaintiff appeared with

his counsel before ALJ Donna Grit for an administrative hearing at which time both Plaintiff and

a vocational expert testified. (PageID.991–1021.) Following the hearing, the ALJ issued an

unfavorable written decision, dated July 17, 2015, concluding that Plaintiff was not disabled.

(PageID.936–988.) On May 9, 2016, the Appeals Council declined to review the ALJ's decision,

making it the Commissioner's final decision in the matter. (PageID.918–925.)

Plaintiff's insured status expired on March 31, 2015. (PageID.940.) To be eligible for DIB under Title II of the Social Security Act, Plaintiff must establish that he became disabled prior to the expiration of his insured status. *See* 42 U.S.C. § 423; *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

## ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. § 404.1520(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. § 404.1520(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining the claimant's residual functional capacity (RFC). *See* 20 C.F.R. § 404.1545.

Plaintiff has the burden of proving the existence and severity of limitations caused by his impairments and that he is precluded from performing past relevant work through step four. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, it is the

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. § 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. § 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. § 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. § 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed. (20 C.F.R. § 404.1520(f)).

Commissioner's burden "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.*

ALJ Grit determined that Plaintiff's claim failed at the fifth step of the evaluation. At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity during the period from his alleged disability onset date of February 15, 2009, through his date last insured of March 31, 2015. (PageID.942.) At step two, the ALJ determined Plaintiff had the severe impairments of: (1) left knee pain status-post surgical repair; (2) degenerative changes of the right shoulder; (3) a right heel spur; (4) obesity; (5) post-traumatic stress disorder (PTSD); (6) depression; (7) and a history of substance abuse. (PageID.942.) At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments. (PageID.944–948.) At the fourth step, the ALJ determined Plaintiff retained the RFC based on all the impairments through his date last insured:

> to perform light work as defined in 20 CFR 404.1567(b) such that he is able to lift and carry twenty pounds occasionally and ten pounds frequently. He is able to push and/or pull up to ten pounds occasionally. He is able to stand and/or walk two hours in an eight-hour workday and sit for up to six hours of an eight-hour workday with normal breaks. He requires the option to alternate between sitting and standing at will. He may occasionally climb ramps and stairs, but never ladders, ropes, or scaffolds. He may occasionally stoop, kneel, crouch, and crawl. He must avoid unprotected heights and dangerous machinery as well as walking on uneven surfaces. He must not perform overhead work[.] He is limited to simple, routine, repetitive tasks involving simple work related decisions with few, if any, workplace changes. He may have occasional interaction with coworkers and supervision, [sic] but must not have public interaction.

(PageID.948–949.) Continuing with the fourth step, the ALJ found that Plaintiff was unable to perform any of his past relevant work. (PageID.977–978.) At the fifth step, the ALJ questioned the VE to determine whether a significant number of jobs exist in the economy that Plaintiff could

perform given his limitations.  *See Richardson*, 735 F.2d at 964.  The VE testified that Plaintiff could perform other work as an assembler of small products (55,000 national positions) and as a garment sorter (52,000 national positions).  (PageID.1017–1020.)  Based on this record, the ALJ found that Plaintiff was capable of making a successful adjustment to work that exists in significant numbers in the national economy.  (PageID.979.)

Accordingly, the ALJ concluded that Plaintiff was not disabled from February 15, 2009, the alleged disability onset date, through March 31, 2015, the date last insured. (PageID.979.)

**DISCUSSION**

1.    **The ALJ's Discussion of the Medical Opinions Satisfies the Treating Physician Rule.**

As noted above, Magistrate Judge Brenneman remanded the prior decision by the Commissioner for failure to follow the treating physician rule.  On remand, the ALJ specifically stated she had reevaluated the treating physicians and provided a lengthy discussion of their opinions.  Nevertheless, Plaintiff contends the ALJ has again violated the treating physician rule. For reasons set out below, the Court disagrees.

By way of background, the treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into his medical condition.  *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).  An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375–76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health & Human Servs.*, 1991 WL 229979, at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health & Human Servs.*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller*, 1991 WL 229979, at *2 (citing *Shavers*, 839 F.2d at 235 n.1); *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286–87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must provide "good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). Simply stating that the physician's opinions "'are not well-supported by any objective findings' and are 'inconsistent with other credible evidence'" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Id.* at 376–77.

The ALJ considered four treating physician opinions. Regarding the first, a June 2010 mental RFC assessment from Dr. Hakima Aqel, the ALJ found that the medical evidence and the record as a whole did not support the assessment. The ALJ specifically referenced Plaintiff's activities of daily living and a later opinion from Dr. Aqel which noted Plaintiff did not have significant limitations in concentration, persistence or pace. The ALJ also noted that the assessment

was internally inconsistent. (PageID.968–969.) Second, the ALJ considered a July 2010 physical RFC assessment from Dr. Aqel and found it was entitled to only partial weight. The ALJ again noted that the opinion was not consistent with the medical evidence of record and was further internally inconsistent, noting for example that the doctor had opined Plaintiff could lift twenty-five pounds frequently but only twenty-pounds occasionally. The ALJ also referenced records noting that Plaintiff had a normal gait and lower extremity strength. (PageID.969–970.) Third, the ALJ considered an updated physical RFC opinion from Dr. Aqel dated July 2013 and gave it only partial weight. The ALJ discussed records demonstrating Plaintiff had intact strength and gait, and further evaluated the opinion against Plaintiff's activities of daily living. (PageID.970–971.) Finally, the ALJ considered the June 2010 mental RFC assessment from Dr. Plunkett and assigned it no weight. (PageID.976–977.) Finding that the doctor was qualified as a treating physician, the ALJ declined to assign it controlling weight because the opinion was internally inconsistent with the doctor's own treatment notes, and the record as a whole, including Plaintiff's daily activities, did not support the opinion.

Despite asserting that the ALJ failed to provide good reasons for assigning less than controlling weight to these opinions, Plaintiff fails to address any of the reasons provided by the ALJ, much less show they are not good reasons or how they are unsupported by substantial evidence. Plaintiff complains that it would be impossible to fully discuss the opinions given the page limits that are regularly imposed in Social Security cases. (PageID.1954.) The Court notes that Plaintiff's brief includes a lengthy recitation of the facts, many of which are unrelated to the specific claims he raises. Moreover, the brief contains at least one-half page of empty space.

(PageID.1953.)  Finally, Plaintiff could have sought, but did not seek, permission for an increase in page limits in this case.

The only specific issue that Plaintiff raises with regard to the medical opinions is the fact that the Commissioner often discounts opinions because they are checkmark opinions with no accompanying explanation.  But the ALJ in this case did not discount the treating physician opinions because they were made on checkmark forms.   Plaintiff then attacks the Social Security Administration's general methods for evaluating medical opinions. He notes that "[i]n the current logic of the Social Security Administration, any visit for treatment in which a person is not openly psychotic, violent, or suicidal, or, in the physical realm, not bleeding to death or demonstrating massive physical dysfunction, apparently is enough to discredit the opinions of long-time treating physicians."  (PageID.1956.)  This baseless assertion does nothing to advance the claim asserted. Nonetheless, the Court has thoroughly examined the record and finds that the ALJ's reasoning is sound and supported by substantial evidence.

The thrust of Plaintiff's argument is that the ALJ gave too much weight to the non-examining agency physicians.  Plaintiff's argument is fairly muddled. Plaintiff references *Gayheart v. Comm'r of Soc. Sec.* and notes the court's statement in that case that "opinions from nontreating and nonexamining sources are never assessed for 'controlling weight.'  The Commissioner instead weighs these opinions based on the examining relationship (or lack thereof), specialization, consistency, and supportability, but only if a treating-source opinion is not deemed controlling. 20 C.F.R. § 404.1527(c). Other factors 'which tend to support or contradict the opinion' may be considered in assessing any type of medical opinion. *Id.* § 404.1527(c)(6)." *Gayheart*, 710 F.3d at 376.   Plaintiff then asserts that "[w]hile the ALJ assigned 'considerable' and not 'controlling'

weight to the non-examining psychologists, that semantic difference does not obscure the fact that her Decision rests almost solely upon their opinions as opposed to the multiple opinions described above on the first two pages of the Argument. Thus the good reasons required by 20 C.F.R. Section 404.1527(d)(2)(2004) to bypass the opinion of a treating physician simply are not present here." (PageID.1957.)

In essence, Plaintiff claims the ALJ could not assign greater weight to the opinions of the non-examining agency consultants than to the opinions of his treating and examining sources without violating the treating physician rule. Plaintiff is mistaken. It is true that, as a general matter, the Commissioner will give "more weight to medical opinions from [a claimant's] treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. § 404.1527(c)(2). But this is by no means as rigid a rule as Plaintiff would apparently prefer. To the contrary, an ALJ may rely on the opinions of the state agency physicians who reviewed a plaintiff's file. *See* 20 C.F.R. § 404.1527(e)(2)(I). "Social Security regulations recognize that opinions from non-examining state agency consultants may be entitled to significant weight, because these individuals are 'highly qualified' and are 'experts in Social Security disability evaluation.'" *Cobb v. Comm'r of Soc. Sec.*, No. 1:12–cv–2219, 2013 WL 5467172, at *5 (N.D. Ohio Sept. 30, 2013) (quoting 20 C.F.R. §§ 404.1527(e)(2)(I), 416.927(e)(2)(I)); *see Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). Indeed, "in appropriate circumstances, opinions from State agency medical and psychological consultants . . . may be entitled to greater weight than the opinions of

treating or examining sources." *Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 642 (6th Cir. 2013).

The ALJ is responsible for weighing conflicting medical opinions. *See Buxton v. Halter*, 246 F.3d 762, 775 (6th Cir. 2001); *see also Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011) ("This court reviews the entire administrative record, but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ."). Where a treating physician's opinion is not supported by objective medical facts, a non-examining physician's opinion may be accepted over it "when the non-examining physician clearly states the reasons for his differing opinion." *Carter v. Comm'r of Soc. Sec.*, 36 F. App'x 190, 191 (6th Cir. 2002). Here, it is patent the ALJ understood the agency consultants had not examined Plaintiff, but nonetheless noted that the opinions were consistent with the record and was based upon the consultants' detailed knowledge of agency regulations. (PageID.967–968.) Accordingly, the ALJ found they were entitled to considerable weight. This is not, as Plaintiff's argues, merely semantics. Rather it was entirely consistent with *Gayheart* as well as the administration's regulations regarding medical source opinions.

In sum, the ALJ provided several good reasons for assigning less than controlling weight to Plaintiff's treating physicians—a determination Plaintiff has not meaningfully challenged. Once the ALJ made this determination, she did not err by determining that greater weight should be given to the opinions from non-examining sources. The ALJ determined that the treating physician opinions were inconsistent with the record while the agency opinions were consistent with the record. This was an entirely appropriate determination. Accordingly, this claim of error is denied.

11

### 2. The ALJ Did Not Err in Considering Plaintiff's Receipt of Unemployment Benefits After His Alleged Disability Onset Date in Discounting Plaintiff's Subjective Allegations.

At the administrative hearing, Plaintiff testified that he was impaired to an extent far greater than as ultimately recognized by the ALJ. After summarizing the testimony, the ALJ found that Plaintiff's allegations were "not entirely credible." (PageID.963.) The ALJ provided a lengthy discussion of her reasons for making this finding, but Plaintiff's sole argument against the ALJ's credibility determination concerns the following statement in the ALJ's decision:

> The record shows the claimant received unemployment benefits in all quarters of 2009 and the first two quarters of 2010 (7D/2). In order to qualify for such benefits, applicants typically must affirm that they are capable of working. Thus, the claimant apparently claimed an ability to work when applying for another form of government benefits, while currently alleging an inability to work during the same period.

(PageID.965.) Plaintiff contends that it was improper for the ALJ to discount his credibility based on his receipt of unemployment benefits.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, may be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984); *see also Grecol v. Halter*, 46 F. App'x 773, 775 (6th Cir. 2002). As the relevant Social Security regulations make clear, however, a claimant's "statements about [his] pain or other symptoms will not alone establish that [he is] disabled." 20 C.F.R. § 404.1529(a); *see also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)); *Hash v. Comm'r of Soc. Sec.*, 309 F. App'x 981, 989 (6th Cir. 2009). Instead, a claimant's assertions of disabling pain and limitation are evaluated under the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1)

> whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted). This standard is often referred to as the *Duncan* standard. *See Workman v. Comm'r of Soc. Sec.*, 105 F. App'x 794, 801 (6th Cir. 2004).

Accordingly, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Id.* (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Id.* (citing *Walters*, 127 F.3d at 531); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001) (quoting *Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972) ("[i]t [i]s for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony")). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 780 (6th Cir. 1987). In fact, as the Sixth Circuit has stated, "[w]e have held that an administrative law judge's credibility findings are virtually unchallengeable." *Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 511 (6th Cir. 2013) (citation omitted).

This district, as well as the Sixth Circuit, has recognized the apparent contradiction between a claimant seeking disability benefits while simultaneously receiving unemployment compensation. *See, e.g.*, *Workman*, 105 F. App'x 794, 801–02 (6th Cir. 2000); *see also Loyacano v. Comm'r of Soc. Sec.*, No. 1: 13–cv–144, 2014 WL 1660072, at * 5 (W.D. Mich. Apr. 25, 2014) (collecting cases); *Smith v. Comm'r of Soc. Sec.*, No. 1:12–cv–904, 2014 WL 197846, at * 16 (S.D. Ohio Jan. 15, 2014); *Barton v. Astrue*, No. 3:11–cv–1239, 2013 WL 6196297, at * 7 (M.D. Tenn. Nov. 27, 2013).

Plaintiff first argues that any benefits he was given were received several years ago. But as the ALJ noted, he nonetheless received these benefits during a period in which he claims he was unable to work. The fact that this may have been several years before the ALJ's decision is immaterial. Plaintiff also argues that the above line of cases no longer applies due to subsequent developments in agency policy. Specifically, Plaintiff points to an August 2010, memorandum from Frank A. Cristaudo, the Chief Administrative Law Judge for the Social Security Administration. That memo instructs ALJs that "the receipt of unemployment benefits does not preclude the receipt of Social Security disability benefits. The receipt of unemployment benefits is only one of many factors that must be considered in determining whether the claimant is disabled." *Webster v. Colvin*, 2014 WL 4095341, at *9 (E.D. Tenn., Aug. 19, 2014). As Chief ALJ Cristaudo explained, "because the disability decisionmaking process is uncertain and quite lengthy, a claimant should not be forced to choose between applying for unemployment and disability benefits." *Id.* Plaintiff argues that this memo precludes consideration of a claimant's receipt of unemployment benefits. Here, the ALJ did not base the credibility determination solely on the receipt of unemployment benefits, but noted that other factors, including Plaintiff's daily activities and medical history, combined with the receipt

of unemployment benefits, stood at odds with her disability claim. This was entirely appropriate. Plaintiff's interpretation of the memo also over-reads the Administration's policy. As the memo itself states, the receipt of unemployment benefits is a factor that may be considered. As such, the deference generally accorded an ALJ's credibility determination is appropriate here. Accordingly, this claim of error is denied.

### 3. The ALJ Properly Evaluated the Other Source Opinion Evidence.

In support of his application for disability benefits, Plaintiff submitted a July 18, 2014, letter on letterhead from Trackin Fast, Inc., where Plaintiff apparently worked part time. In the letter Mr. Brian Stewart, whose position at the company is not evident, wrote "My name is Brian Stewart. Randy Dukes is a part-time on call employee. He has limitations due to his service connected disability. The increases in hours were due to training. He will average 6 to 10 hours per week." (PageID.1372.) Plaintiff also submitted an August 2, 2013, function report that was completed by Plaintiff's mother which generally provided limitations in excess of those accounted for by the ALJ. (PageID.1345–1352.) The ALJ gave little weight to the assessment from Mr. Stewart. She noted that Mr. Stewart was not an acceptable source, that it was unclear what role Mr. Stewart had in the organization, and that the opinion was vague and was not stated in function by function terms. The ALJ further noted that the letter was not consistent with the weight of the medical evidence and Plaintiff's activities of daily living. (PageID.974.) Regarding the function report from Plaintiff's mother, the ALJ also noted that she was not an acceptable source. To the extent that Plaintiff's mother stated that Plaintiff's limitations exceeded those accounted for in the RFC, the ALJ noted that the opinion was not consistent with the weight of the medical evidence and

the record as a whole, including objective examination findings, diagnostic imaging studies, the longitudinal treatment record, and the weight of the medical opinion evidence. (PageID.973–974.)

Neither Mr. Stewart's letter nor the function report from Plaintiff's mother is evidence from an acceptable medical source. 20 C.F.R. § 404.1513(a). Only "acceptable medical sources" can: (1) provide evidence establishing the existence of a medically determinable impairment; (2) provide a medical opinion; and (3) be considered a treating source whose medical opinion could be entitled to controlling weight under the treating physician rule. *See SSR* 06–3p, 2006 WL 2329939 at * 1 (SSA Aug. 9, 2006)); *see also Hickox v. Comm'r of Soc. Sec.*, No. 1:09–cv–343, 2011 WL 6000829, at * 4 (W.D. Mich. Nov.30, 2011). Family members, friends, social workers, therapists, and physician's assistants are classified as "other sources" 20 C.F.R. § 404.1513(d). The opinions of "other sources" are not entitled to controlling weight and there is no requirement that the ALJ provide "good reasons" for rejecting such opinions. *See Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007); *see also Engebrecht v. Comm'r of Soc. Sec.*, 572 F. App'x 392, 398 (6th Cir. 2014); *Borden v. Comm'r of Soc. Sec.*, No. 1:13 cv 2211, 2014 WL 7335176, at *9 (N.D. Ohio Dec.19, 2014); *Hibbard v. Comm'r of Soc. Sec.*, 1:12–cv–1216, 2014 WL 1276518, at *6 (W.D. Mich. Mar. 27, 2014). The ALJ is required to "consider" evidence from such sources. 20 C.F.R. § 404.1527(f).

Plaintiff contends the ALJ imposed "ridiculous requirements" on the other source opinion evidence and further states that "unless a plaintiff is born into a family of physicians, the observations of family members receives no credit from this ALJ." (PageID.1959.) Here, Plaintiff continues a pattern of failing to point to specific errors made by the ALJ in this case, and denigrating arguments do nothing to advance Plaintiff's claim. The ALJ found that both other source opinions

16

were inconsistent with the evidence of record, Plaintiff does not even attempt to argue that this determination was unsupported by substantial evidence. "The burden of proof of showing a decision is not supported by substantial evidence rests with the party seeking to overturn the decision of the agency." *Century Cellunet of S. Michigan, Inc. v. City of Ferrysburg*, 993 F. Supp. 1072, 1077 (W.D. Mich. 1997) (citing *Barwacz v. Michigan Dep't of Educ.*, 674 F. Supp. 1296, 1302 (W.D. Mich. 1987)). Nonetheless, the Court has examined that ALJ's discussion of these two opinions and compared such against the objective record. The ALJ's discussion is supported by overwhelming evidence and easily survives scrutiny when compared to the requirements for considering other source opinions. This claim of error is denied.

## CONCLUSION

For the reasons articulated herein, the undersigned concludes that the ALJ's decision is **AFFIRMED.** A separate judgment shall issue.


Dated:  June 8, 2017                                  /s/ Janet T. Neff                                  
                                                JANET T. NEFF
                                                UNITED STATES DISTRICT JUDGE